UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-20309-JB

UNITED STATES OF AMERICA

v.

ANDREW JACOBUS,

    Defendant.
_____/

## FACTUAL PROFFER

The United States and Defendant Andrew Jacobus ("Defendant" or "JACOBUS") agree that at trial, the United States would have proven beyond a reasonable doubt the following facts, which pertain to violations of Title 18, United States Code, Sections 1343 (wire fraud) and 1956 (money laundering) which occurred in the Southern District of Florida and elsewhere.

From as early as 1993 through as late as April of 2023, JACOBUS held himself out as an investment advisor in both the United States and Venezuela. During that time the Defendant founded and operated Finser International Corporation ("Finser") and Kronus Financial Corporation ("Kronus") as corporations through which he promised to invest victim funds into various lucrative investments including Initial Public Offerings (IPOs) and Certificates of Deposit (CDs) with investment returns well above industry averages. JACOBUS provided potential investors with fund subscription booklets and presentations containing false information about the fund including above average rates of return since 2012. Jacobus induced the victims to invest money in his investment fund with the above-mentioned materially false and fraudulent misrepresentations. Jacobus then diverted the victims' money, sometimes to pay back other investors and other times using it for his own personal use and gain rather than for the purpose he



had represented to the victims. Additionally, at times JACOBUS managed investors already existing investment accounts. JACOBUS also diverted this money to either pay back other clients or for his own personal use and gain.

Since at least 2006 to the present, the Defendant maintained an investment account on behalf of victim I.P. I.P. is a non-profit organization in Venezuela that supports the priests of the Venezuelan Catholic church with health and medical care as well as retirement funds. In or around 2006 I.P. invested approximately $4.6 million with JACOBUS. JACOBUS invested the money using different banks including Amerant, Charles Schwab, Wells Fargo, and Bank of America. I.P. received quarterly bank statements form JACOBUS regarding the investments. JACOBUS had the username and passwords to each bank account for I.P. because he said it would be better that he accessed and controlled the bank accounts from Miami rather than them accessing the bank accounts from Venezuela. Eventually, JACOBUS diverted I.P.'s funds for his personal use. However, JACOBUS lied to I.P. about the whereabouts of their money. In July of 2023, JACOBUS sent an email containing an Amerant Bank balance for June of 2023 with a balance of approximately $3 million, however, an accurate bank statement received from Amerant Bank for June 2023 showed a balance of approximately $28,000. On or around October 17, 2023, JACOBUS sent a letter to I.P.'s Board of Directors resigning as the financial adviser. In the letter JACOBUS, acknowledged that he owed I.P. approximately $6.45 million dollars. JACOBUS redirected I.P. money to accounts for repayment to other victim/investors as well as into accounts for his personal gain. This is just one example of JACOBUS' mismanagement of victim funds over the years.

In 2010, JACOBUS founded Finser and it operated as an investment firm that produced high investment returns by specializing in investing in Initial Public Offerings (IPOs) through what

it called a Corfiser SIMI fund. JACOBUS provided fund subscription booklets and presentations containing false information about the fund, including above average rates of return since 2012. Finser's recruited investors mostly across Latin America with an alleged minimum investment requirement of $500,000. To conceal his fraud, Jacobus would create and provide to the victims fictitious account statements or balances purporting to show the investment portfolio and related balances, when in fact the victims' accounts had significantly smaller balances.

An example of JACOBUS' Finser victims is F.S. In 2017, JACOBUS was introduced to F.S. as an investment advisor. F.S. invested with Finser and received reports of substantial returns on his investment. This created trust, which led F.S. to ask JACOBUS to manage his separate personal investment account with approximately $4 million. JACOBUS completed a POA form to Charles Schwab giving himself withdraw authority for F.S.'s investment account. JACOBUS then used this authority to withdraw F.S.'s entire Charles Schwab balance of approximately $4,074,653.20, F.S.'s principal investment plus the return on investment, via wire transfers to business bank accounts associated with JACOBUS. JACOBUS used this money to pay other victims in furtherance of the fraud scheme as well for personal expenses, including property taxes, lawyer fees, and fines associated with 2020 SEC settlement. During this time, JACOBUS insured F.S. that his investment was safe by providing him with a February 2021 account statement depicting an ending balance of $3,809,993.38. However, based on financial records received from Charles Schwab, the actual February 2021 account balance was $277,542.51.

Based on Jacobus' misrepresentations, on March 3, 2020, F.S. sent JACOBUS $1,000,000 to Kronus Management LLC's Wells Fargo bank account ending in 2534 for the sole purpose of conducting investments on behalf of F.S. through Kronus High Yield Fund. On March 4, 2020,

Jacobus laundered the funds by transferring $300,000 of the money via wire to Long Leg Investments, a company owned by A.R. who is another investment client of Jacobus.

Additionally, on September 10, 2021, JACOBUS sent an email to F.S. containing a fabricated statement for the Charles Schwab Account ending in -5094 for August 2021. This account statement showed an ending value on August 31, 2021, of $3,827,712.03. However, records from Charles Schwab show that the account had a balance of zero dollars since June 30, 2021.

In or around 2018, Jacobus started an investment fund under the name Kronus High Yield Fund. JACOBUS continued to defraud victims using the above-mentioned tactics. When the victims asked Jacobus to close and liquidate their accounts, Jacobus provided numerous excuses as to why that could not be done. One of the many excuses that Jacobus provided to the victims was that the alleged administrator of the investment fund, Harneys, was not releasing the money. In furtherance of this false and fraudulent misrepresentation, Jacobus, using the fake email address "compliance@harneysbvi.com," created fake email communications that purported to show victims why the victims could not withdraw their money. The real Harneys confirmed that their company did not send that email, that they did not represent Kronus, and that the email address "compliance@harneysbvi.com" was not their domain.

Also, in furtherance of his fraudulent scheme, Jacobus created a false and fraudulent audit report which he sent to the victims. The audit report purported to show the financial status of Jacobus' investment fund, and the fact that everything was "in order." Jacobus provided to some of the victims a Kronus High Yield Fund audit report that purported to be from One IBC CPA for the year ending 2020. This audit report was sent using the email address "audit@oneibc-cpa.com,"



which was not from a domain belonging to One IBC CPA, as confirmed by records obtained by U.S. Authorities, but was in fact a domain acquired by Jacobus on or about September 1, 2021.

Finally, JACOBUS confessed his fraud to at least one of his victims. On or about June 21, 2023, Defendant Jacobus wrote a confession to victim B.A. admitting that he misappropriated and lost her investment and asking for her forgiveness.

As a result of his years-long fraud scheme, Jacobus obtained approximately $94 million in fraud proceeds. Further, JACOBUS misappropriated at least $65 million but not more than $150 million which belonged to the victims.

The parties agree that the facts above, which are not all the facts in this case, prove Defendant's guilt as to Counts 1 and 8 of the Indictment beyond a reasonable doubt.

JASON REDING QUIÑONES
UNITED STATES ATTORNEY,

Date: 11/14/2025   By: _____
ROBERT F. MOORE
ASSISTANT UNITED STATES ATTORNEY

Date: 10/31/25   By: _____
BRUCE LEHR, ESQ.
ATTORNEY FOR THE DEFENDANT

Date: 10/31/2025   By: _____
ANDREW JACOBUS
DEFENDANT